IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


JOIE D.,[1]                                          No. 3:19-cv-00218-HZ

                    Plaintiff,                        OPINION & ORDER

          v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

                    Defendant.


Karen Stolzberg
P.O. Box 19699
Portland, OR 97280

          Attorney for Plaintiff

Renata Gowie
Assistant United States Attorney
District of Oregon
1000 SW Third Avenue, Suite 600
Portland, OR 97204

---

[1] In the interest of privacy, this Opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this Opinion uses the same designation for a non-governmental party's immediate family member.

Leisa A. Wolf
Social Security Administration
Office of the General Counsel
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104

     Attorneys for Defendant

HERNÁNDEZ, District Judge:

     Plaintiff Joie D. brings this action seeking judicial review of the Commissioner's final

decision to deny disability insurance benefits ("DIB") and supplemental security income ("SSI").

This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). The Court reverses the

Commissioner's decision and remands this case for further administrative proceedings.

## PROCEDURAL BACKGROUND

     Plaintiff applied for DIB and SSI on August 5, 2015, alleging an onset date of September

15, 2012. Tr. 13.[2] Plaintiff later amended her alleged onset date to September 15, 2013. Tr. 14.

Her application was denied initially and on reconsideration. Tr. 13.

     On September 13, 2017, Plaintiff appeared with counsel for a hearing before an

Administrative Law Judge ("ALJ"). Tr. 13, 36. On January 30, 2018, the ALJ found Plaintiff not

disabled. Tr. 27–28. The Appeals Council denied review. Tr. 1.

## FACTUAL BACKGROUND

     Plaintiff alleges disability based on degenerative disc disease, back problems, arthritis,

Type 2 diabetes, congestive heart failure, carpal tunnel syndrome, fibromyalgia, hand issues,

cholesterol issues, depression, and acid reflux. Tr. 503. At the time of her alleged onset date,

---

[2] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record, filed herein as Docket No. 10.

Plaintiff was forty-five years old. Tr. 211. She has a high school education and past relevant work experience as a caregiver and a wafer machine operator. Tr. 26, 44, 504.

## SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if they are unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Disability claims are evaluated according to a five-step procedure. *See Valentine v. Comm'r*, 574 F.3d 685, 689 (9th Cir. 2009) (in social security cases, agency uses five-step procedure to determine disability). The claimant bears the ultimate burden of proving disability. *Id.*

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled. *Id.*

In step three, the Commissioner determines whether the claimant's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity (RFC) to perform their "past relevant work."

20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can perform past relevant work, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. In step five, the Commissioner must establish that the claimant can perform other work. *Yuckert*, 482 U.S. at 141–42; 20 C.F.R. §§ 404.1520(e)–(f), 416.920(e)–(f). If the Commissioner meets their burden and proves that the claimant can perform other work that exists in the national economy, then the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity after her amended alleged onset date. Tr. 16. Next, at steps two and three, the ALJ determined that Plaintiff has the following severe impairments: "obesity, spine disorder, left shoulder disorder, depression, and anxiety." Tr. 16. However, the ALJ determined that Plaintiff's impairments did not meet or medically equal the severity of a listed impairment. Tr. 18. At step four, the ALJ concluded that Plaintiff has the residual functional capacity to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) with the following limitations:

> [S]he can never climb ladders, ropes scaffolds, or crawl; occasionally climb ramps or stairs, stoop, kneel, and crouch. She can do no overhead reaching with her non-dominant left upper extremity; she can frequently reach in front and laterally with her left upper extremity. She can have no exposure to hazards such as moving mechanical parts[] and unprotected heights. She is limited to jobs with a reasoning level 2 or less. She is limited to performing simple and routine tasks, making simple work decision[s]; having occasional public contact; and having frequent co-worker and supervisory contact.

Tr. 21. Because of these limitations, the ALJ concluded that Plaintiff could not perform her past relevant work. Tr. 26. But at step five, the ALJ found that jobs exist in significant numbers in the national economy that Plaintiff can perform, such as electronics worker, office helper, and price marker. Tr. 28. Thus, the ALJ concluded that Plaintiff is not disabled. *Id.*

**STANDARD OF REVIEW**

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings "are based on legal error or are not supported by substantial evidence in the record as a whole." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). The court considers the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision. *Id.*; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." *Vasquez*, 572 F.3d at 591 (internal quotation marks and brackets omitted); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's") (internal quotation marks omitted).

**DISCUSSION**

Plaintiff argues that the ALJ erred at steps two and four of the sequential analysis by failing to include all Plaintiff's severe impairments and improperly discounting the medical opinion testimony, Plaintiff's subjective symptom testimony, and the lay witness testimony. The Court addresses each argument in turn.

## I.      Subjective Symptom Testimony

Plaintiff argues that the ALJ erred by failing to provide clear and convincing reasons to reject Plaintiff's subjective symptom testimony.

The ALJ is responsible for evaluating symptom testimony. SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017). Once a claimant shows an underlying impairment and a causal relationship between the impairment and some level of symptoms, clear and convincing reasons are needed to reject a claimant's testimony if there is no evidence of malingering. *Carmickle v. Comm'r*, 533 F.3d 1155, 1160 (9th Cir. 2008) (absent affirmative evidence that the plaintiff is malingering, "where the record includes objective medical evidence establishing that the claimant suffers from an impairment that could reasonably produce the symptoms of which he complains, an adverse credibility finding must be based on clear and convincing reasons") (quotation marks and citation omitted); *see also Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (the ALJ engages in a two-step analysis for subjective symptom evaluation: First, the ALJ determines whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged"; and second, "if the claimant has presented such evidence, and there is no evidence of malingering, then the ALJ must give specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of the symptoms.") (quotation marks and citations omitted).

When evaluating subjective symptom testimony, "[g]eneral findings are insufficient." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)). "An ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination." *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015). Instead, "the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195 (9th Cir. 2001); *see also Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (The reasons

proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discount the claimant's testimony.").

The ALJ rejected Plaintiff's subjective symptom testimony because the alleged severity of Plaintiff's symptoms and limiting effects of her impairments was inconsistent with objective medical evidence, inconsistent with her activities of daily living, and because Plaintiff's condition has not significantly deteriorated since she stopped working due to reasons other than her alleged disability. Tr. 25–26.

In terms of her subjective symptoms, Plaintiff testified that she lays down two to three times a day for about thirty minutes to relieve her back and hip pain. Tr. 60. She testified that she could sit for only an hour or two before she needs to walk around or lay down to alleviate her pain. Tr. 60–61. When her back "goes out," which had occurred once or twice since she stopped working in 2012, she cannot move and spends three or four days in bed. Tr. 61. She testified that her left shoulder lacks mobility following her shoulder surgery. Tr. 63–64. She testified that her diastolic heart failure causes shortness of breath after walking for fifteen to twenty minutes, which requires a period of rest to recover. Tr. 65–66. Plaintiff testified that she experiences dizziness two to three times daily for fifteen to twenty seconds. Tr. 66–67. Plaintiff also described neuropathy due to diabetes that causes nerve pain in the top of her feet and numbness of her toes without loss of balance. Tr. 67. She testified that due to her anxiety, she is terrified of public transportation, gets panic attacks when she encounters too many people she does not know, and spends most of her time in the basement isolating from others. Tr. 57–58, 68.

A.    Activities of Daily Living

The ALJ found that Plaintiff's activities of daily living were "not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." Tr. 25.

However, the ALJ did not describe Plaintiff's daily activities. Plaintiff testified that a typical day for her involves getting up, taking a short fifteen- to twenty-minute walk, watching television, making breakfast, washing her dishes, taking a shower, and alternating between sitting, standing, and lying down for the remainder of the day. Tr. 49. She testified that sometimes she goes with her roommates to the store and goes to doctor appointments. *Id.* She testified that she does her own laundry, sometimes does some cleaning, and reads. *Id.* at 49–50. She also takes a second fifteen- to twenty-minute walk in the evenings. Tr. 49, 54.

The ALJ did not explain how that level of activity was inconsistent with her testimony that she experiences significant back pain, left shoulder pain, dizziness, shortness of breath, and fatigue. As a result, Plaintiff's level of daily activities was not a clear and convincing reason to discount her subjective symptom testimony.

B.      Reason Plaintiff Stopped Working

The ALJ rejected Plaintiff's subjective symptom testimony in part because Plaintiff did not quit working because of her disability, she had worked with her impairments for many years before that, and Plaintiff's conditions did not significantly deteriorate after she was laid off by her former employer in 2012. Tr. 25–26. The ALJ concluded that since "the impairments did not prevent the claimant from working earlier" the evidence "strongly suggests that they would not prevent the claimant from continuing to work[.]" Tr. 26.

An ALJ may discount a claimant's testimony if the claimant works for several years with impairments and suffers no significant deterioration in their condition after their alleged onset date. *See Orozco v. Berryhill*, No. 1:16-cv-01807-SB, 2017 WL 5629532, at *6 (D. Or. Nov. 22, 2017) (affirming ALJ's discount of claimant's testimony because the claimant had previously engaged in substantial gainful activity while suffering from her impairments); *Schoonmaker v.*

*Colvin*, No. 6:14-cv-01962-HZ, 2015 WL 6658669, at *6 (D. Or. Oct. 30, 2015) ("[T]he ALJ's finding that he was able to work for many years with his impairments, which had not significantly worsened after the alleged onset date, is supported by substantial evidence and is a reasonable basis for discounting Plaintiff's subjective symptom testimony."). However, in this case, the ALJ's conclusion that Plaintiff suffered no deterioration in her condition after she stopped working is not supported by substantial evidence in the record.

The ALJ did not point to any evidence in the record to support her conclusion that Plaintiff's condition did not deteriorate after her employer laid her off in 2012. The record reflects that Plaintiff's impairments deteriorated in several respects. First, Plaintiff was hospitalized twice in April 2014. She was hospitalized from April 6, 2014, until April 12, 2014, for diabetic ketoacidosis and an abscess that required surgical drainage and IV antibiotic therapy. Tr. 628–46. One week later, Plaintiff was admitted to the hospital again for one day for acute diastolic heart failure. Tr. 609–27. Dr. Chamie noted that Plaintiff's heart failure may have been related to her severe hyperglycemia and infection the week before. Tr. 1219. Plaintiff's left shoulder condition also worsened significantly after her alleged onset date. She developed adhesive capsulitis in the shoulder, resumed narcotic pain medications to treat her shoulder pain, and ultimately had left shoulder surgery in November 2016. Tr. 931, 1244–83.

Although it is true that Plaintiff worked with her impairments before her alleged onset date, Plaintiff was not able to work without any difficulty. Plaintiff testified that she was having trouble with work attendance due to pain in her back, hands, and shoulder long before she stopped working. Tr. 46. She testified that she missed four or five days of work per month due to her pain and that she had taken leave protected by the Family Medical Leave Act for at least ten years before she stopped working. Tr. 51–52. Plaintiff testified that she had a particularly

difficult time with working three days in a row, especially if it involved standing for entire shifts. *Id.* Plaintiff testified that she stopped taking pain medications after she quit working because she could not afford them without insurance. Tr. 53. She also told Dr. Chamie after she stopped working that she "[i]sn't working so this helps control her pain as well." Tr. 1217. Plaintiff also testified that she started to have panic attacks at work and that her anxiety worsened after she stopped working. Tr. 56.

There is no substantial evidence in the record to support the ALJ's conclusion that Plaintiff's conditions did not deteriorate after she stopped working. As a result, the ALJ erred by discounting Plaintiff's subjective symptom testimony on that basis.

### C.     Objective Medical Evidence

The ALJ also discounted Plaintiff's subjective symptom testimony because the ALJ found it inconsistent with the objective medical evidence. Tr. 23. Throughout her decision, the ALJ discussed Plaintiff's subjective symptom testimony in all-or-nothing terms rather than discussing the specific symptoms and what evidence undermines Plaintiff's allegations concerning the intensity, persistence, or limiting effects of those symptoms. Tr. 23 ("the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record"); Tr. 25 ("the record contradicts the claimant's testimony with regard to their nature and extent . . . I have not rejected the claimant's statements about the intensity and persistence of symptoms solely because the available objective medical evidence does not substantiate the statements").

First, The ALJ erred by failing to identify which of Plaintiff's alleged symptoms were inconsistent with the record and what evidence undermined her testimony about the limiting

effects of those symptoms. *See Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1988) ("General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."). Second, the medical evidence relied on by the ALJ in her discussion of the RFC is not inconsistent with Plaintiff's subjective symptom testimony.

The medical evidence described by the ALJ in connection with the RFC includes a lumbar MRI from 2011, a 2008 thoracic spine x-ray, a 2016 left shoulder MRI, and physical therapy records. Tr. 22. The ALJ also summarized records relating to Plaintiff's pre- and post-operative left shoulder treatment between 2016 and 2017, Tr. 23, one of Plaintiff's two April 2016 hospitalizations, *id.*, and Dr. Chamie's treatment records between March 2015 and September 2016, *id.*

The ALJ summarized Plaintiff's April 19, 2014 emergency room visit resulting in her heart failure diagnosis as follows: "alert and oriented to person, place, time, and situation. She was neurologically intact, cooperative with an appropriate mood and affect. She displayed normal speech, normal coordination, and normal motor activity." Tr. 23 (citing Tr. 616). The records relating to that visit reflect that Plaintiff reported with difficulty breathing and swollen legs for a day. An echocardiograph showed a left ventricular ejection fraction of sixty-five to seventy percent, probable mild diastolic relaxation abnormality, mild left atrial enlargement with probable mild mitral stenosis and mild mitral regurgitation, and trace tricuspid regurgitation. Tr. 621. Plaintiff underwent a CT angiogram that showed congestive heart failure, moderate-sized bilateral pleural effusions, and mildly enlarged lymph nodes in the mediastinum. Tr. 623. Plaintiff was admitted to the hospital and discharged the following day with a diagnosis of acute diastolic heart failure. Tr. 609. The objective medical evidence thus demonstrates that Plaintiff

has diastolic and congestive heart failure that could reasonably be expected to cause some of Plaintiff's symptoms.

The ALJ then summarized the records of Dr. Chamie for treatment Plaintiff received between March 2015 and September 2016. The ALJ's summary highlights the positive aspects of Dr. Chamie's notes, including that Plaintiff felt better about walking with a cane, had been to the store and did "fine," that Plaintiff felt "happy, not depressed," that her shoulder was getting better with injections and physical therapy, that she had "much more mobility," that Plaintiff had a negative review of systems on one exam, reported no shortness of breath, and was well groomed and euthymic. Tr. 23.

The records in which Dr. Chamie documented her treatment of Plaintiff show that Dr. Chamie also noted complaints not described by the ALJ. Plaintiff continued to complain of dizziness on an ongoing basis, even after Dr. Chamie made medication changes intended to address that problem. *See* Tr. 1232, 1242, 1249, 1252. Plaintiff's subjective symptom testimony about her dizziness is thus supported by her contemporaneous reports over a seven-month period to Dr. Chamie about those symptoms. Dr. Chamie attributed Plaintiff's dizziness to her diabetes medications. Tr. 1293. The ALJ's decision does not discuss Plaintiff's dizziness symptoms or otherwise explain their impact on the RFC.

The same is true for Plaintiff's testimony that she needs to lay down to alleviate her back pain several times per day. The only evidence in the record cited by the ALJ in discounting Plaintiff's testimony concerning her back problems was the 2011 lumbar MRI and Dr. Chamie's treatment notes. The 2011 lumbar spine MRI, obtained more than two years before Plaintiff's alleged onset date, showed that Plaintiff had a history of lumbosacral neuritis and documented the following abnormalities: mild facet degeneration at L2-3; facet degeneration, right foraminal

stenosis, and effacement of the ventral thecal sac at L3-4; a right hemilaminectomy defect, mild left foraminal stenosis and moderate right foraminal stenosis at L4-5; a right hemilaminectomy defect, distortion of the fat surrounding the S1 nerve root in the lateral recess, a small annulus bulge, and moderately severe bilateral foraminal stenosis at L5-S1. This objective medical evidence is not inconsistent with Plaintiff's testimony that she frequently suffers from significant back pain.

Dr. Chamie's notes also support Plaintiff's testimony that she suffers from significant back pain. In 2012, before Plaintiff stopped working, she told Dr. Chamie that work was "really hard on her back." Tr. 1203. She took pain medications and muscle relaxants at that time to treat her back pain. *Id.* After her alleged onset date, Plaintiff reported that although she still had pain, she was able to tolerate it without narcotic pain medications and that not working had helped to control her pain. Tr. 1217. In August 2014, Plaintiff reported that she had a back strain and "[c]ould barely get out of bed for a week," so Dr. Chamie prescribed a pain medication "to get [her] back moving and walking." Tr. 1222, 1224. When Plaintiff returned to see Dr. Chamie in July 2015, she reported that her "pain is bad in her back and knees but she does not want to be on pain medication for this." Tr. 1227. Dr. Chamie ordered a cane to help Plaintiff with walking. Tr. 1229. Plaintiff reported later that month that she felt better walking with a cane. Tr. 1232.

In November 2015, Plaintiff's pain complaints focused more on her left shoulder, and Dr. Chamie resumed prescribing her narcotic pain medications. Tr. 1244. Dr. Chamie continued to prescribe Plaintiff narcotic pain medications for her left shoulder pain until her surgery in November 2016. Tr. 1244–83. Although Plaintiff's back pain complaints are not documented in the medical records during that time, her use of narcotic medications could explain why her back pain complaints diminished. Nevertheless, the ALJ's failure to provide a clear and convincing

reason to reject Plaintiff's testimony that she must lay down for up to thirty-minute periods daily to alleviate her back pain was legal error. *Carmickle v. Comm'r*, 533 F.3d 1155, 1160 (9th Cir. 2008) (the ALJ must provide clear and convincing reasons to reject a claimant's testimony if there is no evidence of malingering).

The ALJ noted that Plaintiff has "not generally received the type of medical treatment one would expect for an individual experiencing the pain levels described by the claimant." Tr. 25. However, Plaintiff has had two lumbar spine surgeries, a shoulder surgery, and two hospitalizations for heart and diabetes emergencies. The bulk of Plaintiff's subjective symptom testimony pertains to her back, shoulder, heart, and diabetes impairments. That level of treatment is not inconsistent with a disabling degree of symptoms. For those reasons, the ALJ erred by rejecting Plaintiff's subjective symptom testimony.

## II.     Medical Opinion Testimony

Plaintiff argues that the ALJ erred by failing to consider all the factors in 20 C.F.R. § 416.1527(b) when evaluating Dr. Chamie's testimony. Social security law recognizes three types of physicians: (1) treating, (2) examining, and (3) non-examining. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). Generally, more weight is given to the opinion of a treating physician than to the opinion of those who do not treat the claimant. *Id.*; 20 C.F.R. §§ 404.1527(c)(1)– (2), 416.927(c)(1)–(2). More weight is also given to an examining physician than to a non-examining physician. *Garrison*, 759 F.3d at 1012. If a treating physician's medical opinion is supported by medically acceptable diagnostic techniques and is not inconsistent with other substantial evidence in the record, then the treating physician's opinion is given controlling weight. *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014); *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). If the treating physician's opinion is not contradicted by another doctor, the

ALJ may reject it only for "clear and convincing" reasons supported by substantial evidence in the record. *Ghanim*, 763 F.3d at 1160–61. Even if the treating physician's opinion is contradicted by another doctor, the ALJ may not reject the treating physician's opinion without providing "specific and legitimate reasons" which are supported by substantial evidence in the record. *Id.* at 1161; *Bayliss*, 427 F.3d at 1216.

On October 4, 2017, Dr. Chamie completed a questionnaire that described the symptoms Plaintiff experiences as a result of her impairments. Tr. 1293–94. As a result of her carpal tunnel syndrome and left shoulder adhesive capsulitis/tendinitis, Dr. Chamie noted that Plaintiff suffers from mobility disturbance and pain. Tr. 1293. Plaintiff suffers from shortness of breath, fatigue, and dyspnea on exertion as a result of her congestive heart failure and diastolic dysfunction. *Id.* Plaintiff's neuropathy in her heels and toes causes her pain and loss of sensation. *Id.* As a result of Plaintiff's two prior back surgeries, Plaintiff suffers from mobility disturbance, pain, uses a cane, walks slowly, and cannot bend or lift. *Id.* Because of her anxiety and depression, Plaintiff is unable to use the bus or be in large groups and limits her ability to interact with others. *Id.* Dr. Chamie said that Plaintiff's diabetes and medications cause her dizziness. Tr. 1294. Dr. Chamie opined that Plaintiff could stand for one hour before needing to rest. Tr. 1293. She also opined that Plaintiff needs to rest due to her impairments for five to six hours per day and that Plaintiff was unable to reliably attend a job. Tr. 1294.

The ALJ assigned Dr. Chamie's opinion little weight. Tr. 24. The ALJ found that Dr. Chamie's opinion was not consistent with the record as a whole and was inconsistent "with the doctor's progress notes" and with the "other evidence summarized above." *Id.* The ALJ also discounted Dr. Chamie's opinion because Dr. Chamie did not explain her conclusions and the ALJ found them "exaggerated compared to the treatment record, exams of record, and objective

testing." *Id.* The ALJ also found that Dr. Chamie's opinion that Plaintiff's cane was medically necessary was unsupported by the record. *Id.* Consequently, the ALJ disregarded "the bulk" of Dr. Chamie's opinion because "it is contradicted repeatedly in her own treatment notes . . . and by other professionals who have reviewed the record." Tr. 25.

The ALJ did not provide clear and convincing reasons for discounting Dr. Chamie's opinion. Dr. Chamie has treated Plaintiff since 2011. Tr. 683–88. Dr. Chamie treated Plaintiff's diabetes, congestive heart failure, back pain, shoulder pain, anxiety, and depression. Tr. 683–710. Dr. Chamie prescribed Plaintiff's medications and coordinated her care with other providers. *See, e.g.*, Tr. 709 (behavioral health referral and prescription of Lexapro for anxiety and depression); 731 (noting awaiting appointment with orthopedist to treat shoulder pain); Tr. 1218–19 (discussing medication management and review of records from county clinic and Adventist Hospital).

The ALJ failed to explain how Dr. Chamie's opinion is inconsistent with Dr. Chamie's treatment records. Each of the conditions that Dr. Chamie noted in her opinion were conditions that Dr. Chamie herself had observed, documented in her records, and treated. Dr. Chamie's opinion relates primarily to the symptoms of those conditions, which Dr. Chamie had a chance to observe during the many visits that Dr. Chamie had with Plaintiff.

The ALJ also did not explain how Dr. Chamie's opinion was inconsistent with the exams of record and objective testing. The physical symptoms Dr. Chamie described stem from conditions that are documented by an echocardiogram, laboratory testing, MRI testing, and surgical findings. Thus, Plaintiff's reported symptoms are not inconsistent with examinations and objective testing. Finally, to the extent that Dr. Chamie's opinion is contradicted by "other professionals who have reviewed the record," none of the medical professionals who reviewed

the record examined Plaintiff. Thus, those opinions cannot alone "constitute substantial evidence that justifies the rejection of the opinion of an examining or treating physician." *Morgan v. Comm'r*, 169 F.3d 595, 602 (9th Cir. 1999).

The ALJ was required to consider the length of Plaintiff's treatment relationship with Dr. Chamie and the frequency of examination; the supportability of Dr. Chamie's opinions; the consistency of Dr. Chamie's opinion with the record as a whole and other relevant factors. 20 C.F.R. § 404.1527(c). Although the ALJ claimed to have considered those factors, Tr. 24, she did not discuss how they affected her analysis of the weight to be given to Dr. Chamie's opinion. As a result, the ALJ erred by giving little weight to Dr. Chamie's opinion.

## III.   Lay Witness Testimony

Plaintiff argues that the ALJ erred by discounting the lay witness testimony of Denise Sanders and Danielle Place. The ALJ may discount a lay witness opinion if she provides reasons that are germane to each witness. *Dale v. Colvin*, 823 F.3d 941, 943 (9th Cir. 2016). The ALJ gave little weight to the lay witness opinions because their descriptions of Plaintiff's limitations were "excessive in light of the rather benign medical findings and imaging studies." Tr. 22. As discussed above, neither of those reasons is supported by substantial evidence. It is unclear which medical findings or imaging studies the ALJ referred to as "benign," but the medical findings and imaging studies concerning Plaintiff's diabetes, heart failure, back, and shoulder conditions are not benign. As a result, the ALJ erred by giving little weight to the opinions of Ms. Place and Ms. Sanders.

## IV.   Severe Impairments

Plaintiff argues that the ALJ erred at step two by finding that her diastolic heart failure and diabetes are not severe impairments. The step two inquiry is a *de minimis* screening device

used to dispose of groundless claims. *Bowen*, 482 U.S. at 153–54. The claimant bears the burden of establishing that she has a severe impairment at step two by providing medical evidence. 20 C.F.R. §§ 404.1512, 416.912. "An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1522(a), 416.922(a). "An impairment is not severe if it is merely a 'slight abnormality (or combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities.'" *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (quoting Social Security Ruling (SSR) 96-3p, 1996 WL 374181, at *1 (July 2, 1996)).

At step two, the ALJ must consider the combined effect that all the claimant's impairments have on the claimant's ability to perform basic work activities without regard to whether each alone is sufficiently severe. *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003). "A determination that an impairment(s) is not severe requires a careful evaluation of the medical findings which describe the impairment(s) and an informed judgment about its (their) limiting effects on the individual's physical and mental ability(ies) to perform basic work activities[.]" SSR 85-28, 1985 WL 56856, at *4 (Jan. 1, 1985).

The ALJ found that only Plaintiff's obesity, spine disorder, left shoulder disorder, depression, and anxiety were severe impairments. Tr. 16. Plaintiff argues that the ALJ erred by failing to include Plaintiff's diastolic heart failure and diabetes as severe impairments because the ALJ did not consider the limiting effects of those impairments when formulating the RFC. Pl. Op. Br. 10, ECF 15. Defendant argues that any error in failing to identify Plaintiff's diastolic heart failure and diabetes as severe impairments was harmless because the ALJ included the limiting effects of all Plaintiff's impairments in the RFC. Def. Br. 10, ECF 18.

When the ALJ neglects to include a severe impairment at step two, the error is harmless if the ALJ considers a claimant's functional limitations at steps four and five, including those caused by the omitted severe impairment. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). Plaintiff alleges that the ALJ failed to include the following limiting effects of her diastolic heart failure and diabetes in the RFC: shortness of breath, fatigue, inability to walk longer than fifteen to twenty minutes, requirement to rest for thirty minutes after walking, exertional malaise, and dizziness.[3]

In discussing her formulation of Plaintiff's RFC, the ALJ's only reference to the symptoms related to Plaintiff's diastolic heart failure and her diabetes was to Plaintiff's own testimony about those symptoms, Tr. 21–26, which the ALJ erroneously rejected. As a result, the error in failing to include the limiting effects of Plaintiff's diastolic heart failure and diabetes— whether those conditions are severe or non-severe—was harmful error. *Lewis*, 498 F.3d at 911.

## V.    VE Hypothetical

Plaintiff argues that the ALJ's failure to include in the VE hypothetical Plaintiff's limitations with concentration, persistence, or pace was legal error. Pl. Op. Br. 19. Plaintiff argues that when she suffers from panic attacks, she is unable to concentrate or persist at all. *Id.* at 20. Plaintiff also argues that because the VE hypothetical excluded many of Plaintiff's limitations, the VE's testimony that Plaintiff can perform restricted light work has no evidentiary value. Finally, Plaintiff argues that because Plaintiff was nearly fifty years old at the time of the hearing, the ALJ erred by failing to consider the Grids because Plaintiff's age was borderline. *Id.*

---

[3] Plaintiff also argues that she has neuropathy and a history of carpal tunnel surgeries that contribute to her disability but fails to identify any limiting effects of those conditions that were excluded from the RFC.

Plaintiff is correct that a VE's testimony has no evidentiary value if the hypothetical posed to the VE by the ALJ failed to include all a claimant's limitations. *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988) (citing *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984)). However, the ALJ need not include limitations identified by witnesses whose testimony was accorded diminished weight. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008) (citing *Batson v. Comm'r*, 359 F.3d 1190, 1195–96 (9th Cir. 2004)). Here, the ALJ did not include the limitations identified by the lay witnesses, Dr. Chamie, and Plaintiff in the RFC and the VE hypothetical because the ALJ discounted or rejected their testimony. Because the ALJ committed legal error in analyzing the lay witness testimony, subjective symptom testimony, and the medical opinion evidence, the ALJ also erred in posing an incorrect VE hypothetical. *See, e.g.*, *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 886 (9th Cir. 2006) (VE hypothetical was legally inadequate because it failed to include all functional limitations supported by substantial evidence). Because the ALJ must formulate a new RFC and VE hypothetical that includes all Plaintiff's limitations, the Court need not address Plaintiff's remaining arguments concerning her age and alleged problems with concentration, persistence, or pace. Those claims should be addressed by the ALJ in the first instance on remand.

## VI.     Remand for Benefits

Plaintiff asks the Court to credit the above-described testimony as true and remand this case for payment of benefits. Pl. Op. Br. 20. To determine which type of remand is appropriate, the Ninth Circuit uses a three-part test. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014); *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1100 (9th Cir. 2014). First, the ALJ must fail to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion. *Garrison*, 759 F.3d at 1020. Second, the record must be fully

developed, and further administrative proceedings would serve no useful purpose. *Id.* Third, if the Court remands the case and credits the improperly discredited evidence as true, the ALJ would be required to find the claimant disabled. *Id.* To remand for an award of benefits, each part must be satisfied. *Id.* The "ordinary remand rule" is "the proper course," except in rare circumstances. *Treichler*, 775 F.3d at 1101.

The Court finds that the ordinary remand rule is the proper course in this case. Plaintiff did not develop her argument that remand for an award of benefits is the appropriate remedy. The record is not fully developed on the question of Plaintiff's functional limitations, and any conflicts between the reviewing physicians' opinions and Dr. Chamie's opinion, once properly weighed, must be resolved. Further, it is unclear whether the ALJ would be required to find Plaintiff disabled on remand. The VE identified several sedentary jobs based on a hypothetical posed by Plaintiff's counsel that included all of Plaintiff's alleged limitations except rest breaks of fifteen to thirty minutes twice per day. Tr. 78–79. The ALJ must develop the record to determine whether Plaintiff can perform other jobs available in the national economy after formulating an RFC that includes all of Plaintiff's functional limitations. Accordingly, the Court remands for further administrative proceedings.

///

///

///

///

///

///

///

**CONCLUSION**

Based on the foregoing, the Commissioner's decision is REVERSED and REMANDED

for further administrative proceedings.

IT IS SO ORDERED.

DATED:___June 21, 2021_____.


_Marco Hernandez_____
MARCO A. HERNÁNDEZ
United States District Judge